UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY, | :<br>:<br>: |
| Plaintiff, | : Case No. _____<br>: |
| v. | :<br>: **COMPLAINT FOR VIOLATIONS OF**<br>: **THE FEDERAL SECURITIES LAWS** |
| SAILPOINT TECHNOLOGIES HOLDINGS, INC., CAM MCMARTIN, HEIDI M. MELIN, JAMES M. PFLAGING, WILLIAM G. BOCK, RONALD J. GREEN, MARK D. MCCLAIN, TRACEY E. NEWELL, SUDHAKAR RAMAKRISHNA, and MICHAEL J. SULLIVAN, | :<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against SailPoint Technologies Holdings, Inc. ("SailPoint" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Moreover, Plaintiff seeks to enjoin the shareholder vote on a proposed transaction, pursuant to which SailPoint will be acquired by Thoma Bravo, L.P. ("Thoma Bravo"), through Thoma Bravo's affiliates Project Hotel California Holdings, LP ("Parent"), and Project Hotel California Merger Sub, Inc. ("Merger Sub") (the "Proposed

Transaction"), because the Schedule 14A Definitive Proxy Statement (the "Proxy Statement") filed by SailPoint with the SEC on May 31, 2022, soliciting Plaintiff's and all SailPoint shareholders' affirmative vote on the Proposed Transaction misrepresents or omits material information necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or to seek appraisal.

2. On April 11, 2022, SailPoint issued a press release announcing its entry into an Agreement and Plan of Merger, dated April 10, 2022, to sell SailPoint to Thoma Bravo (the "Merger Agreement"). Under the terms of the Merger Agreement, SailPoint shareholders will receive $65.25 in cash for each share of SailPoint common stock owned (the "Merger Consideration"). The Proposed Transaction is valued at approximately $6.9 billion.

3. The Proxy Statement, which recommends that SailPoint stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SailPoint management's financial projections relied upon by the Company's financial advisor Morgan Stanley & Co. LLC ( "Morgan Stanley") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses supporting the fairness opinion provided by Morgan Stanley; and (iii) Morgan Stanley's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SailPoint stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, SailPoint's public stockholders will make a voting or appraisal decision regarding the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until the Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either: (i) a corporation conducting business in and maintaining operations within this District or (ii) an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, SailPoint's common stock trades on The New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SailPoint.

9. Defendant SailPoint is a Delaware corporation with its principal executive offices located at 11120 Four Points Drive, Suite 100, Austin, Texas 78726. SailPoint provides enterprise identity security solutions in the United States, Europe, the Middle East, Africa, and internationally. SailPoint's shares trade on The New York Stock Exchange under the ticker symbol "SAIL."

10. Defendant Cam McMartin ("McMartin") has been a director of the Company since January 2020. Defendant McMartin previously served as the Company's Chief Financial Officer ("CFO") from 2011 to May 2019, as Chief Operating Officer ("COO") from May 2019 until December 2019, and as Interim CFO from September 2021 to March 15, 2022.

11. Defendant Heidi M. Melin ("Melin") has been a director of the Company since January 2019.

12. Defendant James M. Pflaging ("Pflaging") has been a director of the Company since January 2015.

13. Defendant William G. Bock ("Bock") is Chairman of the Board and has been a director of the Company since 2011.

14. Defendant Ronald J. Green ("Green") has been a director of the Company since July 2021.

15. Defendant Mark D. McClain ("McClain") co-founded the Company and has been Chief Executive Officer ("CEO") and a director of the Company since December 2005.

16. Defendant Tracey E. Newel ("Newel") has been a director of the Company since March 2019.

17. Defendant Sudhakar Ramakrishna ("Ramakrishna") has been a director of the Company since June 2021.

18. Defendant Michael J. Sullivan ("Sullivan") has been a director of the Company since November 2017.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20. Thoma Bravo is one of the largest private equity firms in the world, with more than $103 billion in assets under management as of December 31, 2021. Thoma Bravo invests in growth-oriented, innovative companies operating in the software and technology sectors. Leveraging its sector expertise and proven strategic and operational capabilities, Thoma Bravo collaborates with its portfolio companies to implement operating best practices, drive growth initiatives and make accretive acquisitions intended to accelerate revenue and earnings. Over the past 20 years, Thoma Bravo has acquired or invested in more than 375 companies representing over $190 billion in enterprise value. Thoma Bravo has offices in Chicago, Miami and San Francisco.

21. Parent is a Delaware limited partnership affiliated with Thoma Bravo.

22. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. SailPoint is the leader in identity security for the modern enterprise. Harnessing the power of its expertise combined with machine learning, SailPoint automates the management and control of access, delivering only the required access to the right identities and technology resources at the right time. The Company's identity platform seamlessly integrates with existing systems and workflows, providing the singular view into all identities and their access. SailPoint meets customers where they are with an identity solution that matches the scale, velocity and environmental needs of the modern enterprise. SailPoint empowers the most complex enterprises worldwide to build a security foundation grounded in identity security.

24. SailPoint offers software as a service ("SaaS") and software platforms, which provide organizations visibility and the intelligence required to empower users and manage their

access to systems, applications, and data across hybrid information technology environments, spanning on-premises, cloud and mobile applications, and file storage platforms. Company solutions include IdentityNow, a cloud-based multi-tenant identity security platform; IdentityIQ, an on-premises identity security solution; and SailPoint Identity Services, a multi-tenant SaaS subscription service. The Company sells its products and solutions to commercial enterprises, financial institutions, and governments directly, as well as through system integrators, technology partners, and value-added resellers. As of December 31, 2021, SailPoint had 2,259 customers based in 65 countries.

25. On May 5, 2022, the Company announced its first quarter 2022 financial results and business developments. Total annual recurring revenue ("Total ARR") on March 31, 2022, was $394.7 million, a 46% increase year-over-year. Total revenue was $115.4 million, a 27% increase over Q1 2021. Subscription revenue was $85.6 million, a 44% increase over Q1 2021, of which SaaS revenue was $41.1 million, an 88% increase over Q1 2021. Reflecting on the Company's performance, defendant McClain commented:

> SailPoint delivered another excellent quarter, highlighted by 46% total ARR growth and 44% subscription revenue growth. The strong performance was driven by our sales execution and demand from global enterprises that recognize the strategic role identity security plays in securing their businesses.

**The Proposed Transaction**

26. On April 11, 2022, SailPoint issued a press release announcing the Proposed Transaction, which states, in relevant part:

> AUSTIN, Texas--(BUSINESS WIRE)-- SailPoint Technologies Holdings, Inc. (NYSE: SAIL), the leader in enterprise identity security, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values SailPoint at approximately $6.9 billion.

Subject to the terms of the Agreement, SailPoint stockholders will receive $65.25 per share in cash, representing a premium of 48% to SailPoint's 90-day volume-weighted average price (VWAP).  Upon completion of the transaction, SailPoint will become a privately held company with the flexibility and resources to continue providing industry-leading identity security solutions to modern enterprises around the world.  Additionally, SailPoint will benefit from the operating capabilities, capital support, and deep software expertise of Thoma Bravo.

"Identity security is core to cyber security and businesses have realized that to fuel business growth and success, they must start with identity as the foundation for secure business transformation.  We've experienced rapid growth and see a tremendous opportunity ahead of us to continue to set the pace in the identity security market as the category leader," said Mark McClain, CEO and Founder, SailPoint.  "This transaction delivers significant immediate cash value to our stockholders and maximizes the value of their shares.  The transaction will also allow us to pursue our long-term growth trajectory with greater flexibility and effectiveness to support our customers, expand our markets, and accelerate innovation in identity security with the backing of a strong financial partner with deep sector expertise.  Thoma Bravo's belief in our vision for identity security aligns strongly with our desire to accelerate and extend our leadership for years to come."

"SailPoint is ideally positioned to capitalize on the large and growing demand from modern enterprises for robust identity security solutions that secure their business and reduce risk," said Seth Boro, a Managing Partner at Thoma Bravo.  "Their market-leading identity security platform provides the autonomous and intelligent approach that the market requires today, especially among larger enterprises and as hybrid working becomes more common.  We look forward to partnering with Mark and his talented team to drive SailPoint's next chapter of growth."

"SailPoint is the clear leader in providing trusted identity security to the most well-respected global brands," said Andrew Almeida, a Partner at Thoma Bravo.  "As digital transformation becomes imperative for enterprises of all sizes to remain competitive, SailPoint's innovative products provide the foundation for a robust security infrastructure that keeps employees and sensitive information safe.  We are excited to leverage Thoma Bravo's deep software and operational capabilities to support SailPoint's mission to be the de facto identity security platform player of choice."

Thoma Bravo has deep expertise in growing industry-leading software brands like SailPoint who are poised for significant growth and market leadership.  SailPoint brings a rich heritage in identity security and a deep-seated commitment to driving innovation at a pace that the market demands today.  Thoma Bravo's operational and financial resources combined with SailPoint's focus on driving consistent innovation that delivers sustained customer success will set SailPoint on a path for sustained long-term growth.

**Transaction Details**

A Special Committee of the Board of Directors of SailPoint has unanimously recommended, and following that recommendation, the Board has unanimously approved, the agreement with Thoma Bravo, and the Board unanimously recommends that SailPoint stockholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The agreement includes a "go-shop" period expiring at 11:59 p.m. Eastern time on May 16, 2022, which allows the Board and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and SailPoint does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

The transaction is expected to close in the second half of 2022, subject to customary closing conditions, including approval by SailPoint stockholders and receipt of regulatory approvals. Upon closing of the transaction, SailPoint's common stock will no longer be listed on any public market. The Company will continue to be headquartered in Austin, Texas. Financing for the transaction is being provided by Golub Capital, Blackstone Credit and Owl Rock Capital.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor and Goodwin Procter LLP is serving as legal counsel to SailPoint. Kirkland & Ellis LLP is serving as legal counsel to Thoma Bravo.

**Insiders' Interests in the Proposed Transaction**

27.     SailPoint insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SailPoint.

28.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Thoma Bravo. Under the terms of the Merger Agreement, SailPoint may establish a

transaction program (the "Transaction Bonus Program") and a retention program (the "Retention Program") providing for cash bonuses up to an aggregate amount of $5.0 million.

29.     Moreover, if they are terminated in connection with the Proposed Transaction, SailPoint's named executive officers stand to receive substantial cash severance payments in the form of Golden Parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites / Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Mark McClain | 750,000 | 21,410,071 | 20,123 | 22,180,194 |
| Colleen Healy | 425,000 | 8,280,421 | 6,165 | 8,711,586 |
| Cam McMartin(4) | 450,000 | — | 20,203 | 470,203 |
| Matt Mills | 450,000 | 14,877,036 | 20,339 | 15,347,375 |
| Chris Schmitt | 350,000 | 4,996,518 | 29,086 | 5,375,604 |
| Grady Summers | 425,000 | 14,009,159 | 26,958 | 14,461,117 |

**The Proxy Statement Contains Material Misstatements and Omissions**

30.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SailPoint's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

31.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Morgan Stanley; and (ii) Morgan Stanley's potential conflicts of interest. Accordingly, SailPoint stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections and Morgan Stanley's Financial Analyses*

32. The Proxy Statement omits material information regarding the Company's Financial Projections.

33. With respect to the Company's "March 2022 Case" financial projections, the guidance provided by SailPoint management to Morgan Stanley with respect to Morgan Stanley's extrapolating the projections through calendar year 2036.

34. The Proxy Statement also omits material information regarding Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, SailPoint's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to SailPoint's stockholders.

36. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the net present value of the Company's net operating losses; (ii) the financial metric that perpetual growth rates were applied to in order to derive the terminal value; (iii) the implied terminal multiples resulting from the analysis; (iv) the Company's net debt; and (v) the Company's outstanding shares on a fully diluted basis.

37. The omission of this information renders the statements in the "Management Projections" and "Opinion of Morgan Stanley & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

38. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Morgan Stanley.

39. The Proxy Statement sets forth in connection with the Proposed Transaction:

> In the thirty months prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for SailPoint and received aggregate fees of approximately $2 to $5 million in connection with such services. In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financing services for Thoma Bravo and the Thoma Bravo Related Entities, and have received aggregate fees of approximately $10 to $25 million in connection with such services. Morgan Stanley may also seek to provide financial advisory and financing services to SailPoint, Thoma Bravo, Thoma Bravo Related Entities and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

The Proxy Statement fails, however, to disclose the specific services that Morgan Stanley performed for SailPoint, Thoma Bravo and the "Thoma Bravo related Entities" in the thirty months prior to the date of Morgan Stanley's fairness opinion.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. The omission of this information renders the statements in the "Opinion of Morgan Stanley & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of

SailPoint will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45.     By virtue of their positions within the Company, the defendants were aware of the omitted information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about (i) the Company's financial projections and the inputs and assumptions underlying Morgan Stanley's financial analyses; and (ii) Morgan Stanley's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of SailPoint within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions as officers and/or directors of SailPoint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, SailPoint stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SailPoint, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SailPoint stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 1, 2022          **WEISS LAW**

                By _/s/ Michael Rogovin_
                Michael Rogovin
                476 Hardendorf Ave. NE
                Atlanta, GA 30307
                Tel: (404) 692-7910
                Fax: (212) 682-3010
                Email: mrogovin@weisslawllp.com

                *Attorneys for Plaintiff*